**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SINGLE PATH SOLUTIONS, LLC,<br><br>Plaintiff,<br>v.<br><br>DELIVERHEALTH SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No: 1:24-cv-11252-LTS |

**STIPULATION AND [PROPOSED] ORDER REGARDING**
**ELECTRONICALLY STORED INFORMATION**

Plaintiff Single Path Solutions, LLC ("Plaintiff") and Defendant DeliverHeath Solutions, LLC ("Defendant"), (each a "Party" and collectively, the "Parties"), by and through their counsel, hereby stipulate and agree to the following with respect to the production of electronically stored information and agree to the entry of this Stipulation as an Order of the Court (the "Stipulation and Order"). Nothing in this Stipulation and Order amends or alters any obligations of the Parties as set forth in the November 15, 2024 Confidentiality Stipulation and Protective Order (ECF No. 75). Should there be any conflict, the November 15 Confidentiality Stipulation and Protective Order (ECF No. 75) shall control.

## I. DEFINITIONS

The following terms in this Stipulation and Order shall have the agreed-upon meanings set forth below. In addition, the definitions set forth in the applicable court rules, including without limitation the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts ("Local Rules"), are incorporated as if set forth fully herein and supplemented by the definitions set forth herein. Nothing herein shall limit the Parties from further defining terms in any discovery requests.

A. "Court" refers to the U.S. District Court for the District of Massachusetts.

B. "Custodian" refers to the parties, their employees, and the individuals identified in this Stipulation and Order by the Producing Party as persons the Producing Party believes likely to have possession, custody and/or control of ESI relating to the subject matter of this action.

C. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and Local Rule 26.5(c)(2). A draft or nonidentical copy is a separate document within the meaning of this term.

D. "Electronically Stored Information" and "ESI" means any type of information that is or can be stored electronically on any electronic device and includes, without limitation, information created, manipulated, communicated, stored, and utilized in digital or electronic form, requiring the use of computing hardware or software.

E. "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information as well as any other text, including without limitation, comments, and tracked changes in Microsoft Word documents and notes in Microsoft PowerPoint documents.

F. "Initial Search Collection" refers to the universe of ESI generated by a Producing Party once the Producing Party applies search terms to its Preliminary Collection (as defined herein).

G. "Load File" means an electronic file containing information identifying a set of paper-scanned images or electronically processed files and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File shall also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

H. "Metadata" means a Concordance delimited text data file ("DAT") which contains the field level information, as existing in the documents received by counsel: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata includes without limitation: original file name, document creation date, last modified date, author(s), sender(s), and recipient(s).

I. "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified.

J. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

K. "Paper Discovery" means documents and things pursuant to Fed. R. Civ. P. 26 and 34 which were originally created in paper format and which were not converted into digital or electronic format.

L. "PDF" and ".PDF" means a portable document format that provides an electronic image of text or text and graphics that can be viewed, printed, and electronically transmitted.

M. "Preliminary Collection" means the initial collection of: (1) all electronic mail ESI from the Custodians identified by the Producing Party; and (2) all other ESI and all Paper Discovery from such Custodians that the Producing Party reasonably believes, in good faith, may contain responsive information.

N. "Producing Party" means a Party that produces ESI and/or Paper Discovery.

O. "Production Set" means the set of documents generated after a Party reviews its Initial Search Collection for privilege and responsiveness.

P. "Receiving Party" means a Party to whom ESI and/or Paper Discovery is produced.

Q. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard file format capable of being viewed and printed on standard computer systems. A Portable Document Format (PDF) file is an example of a Static Image.

## II. GENERAL TERMS

A. **General.** The procedures and protocols set forth in this Stipulation and Order shall generally govern the identification, preservation, collection, and production of ESI in this action. If necessary, the procedures and protocols set forth in this Stipulation and Order shall also govern the identification, preservation, collection, and production of Paper Discovery in this action as well. That said, it is expected by the Parties that all or the vast majority of document production in this matter will be ESI.

B. **Commitment to Good Faith Cooperation.** The Parties recognize the importance the Court places on cooperation and therefore commit to cooperate in good faith, including with regard to discovery obligations and attempts to resolve discovery disputes. ESI accessible through reasonable means will be part of the discoverable material in this action and the Parties agree to cooperatively exchange the same as non-privileged, responsive discoverable material and use reasonable efforts in accordance with the Federal Rules of Civil Procedure and the Local Rules to identify, preserve, collect, and produce information.

C. **Each Party Bears its Own Costs.** Each Party shall bear its own costs with respect to its efforts to identify, preserve, collect, and produce ESI in accordance with this Stipulation and Order. A Producing Party may, however, move the Court to shift the costs related

to discovery of ESI in response to, for example, requests or demands that seek to impose undue burden, are overly broad, and/or are not proportional to the needs of this case.

D. **Duty to Preserve Information.** Each Party will take reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any document within the Party's possession, custody or control and which the Party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P. 26(b)(l).

E. **No Waiver and Objections Preserved.** By identifying, preserving, collecting, and producing ESI and/or Paper Discovery pursuant to this Stipulation and Order, the Parties: (1) do not waive any objections that they might have under the attorney-client privilege, work-product doctrine, and any other such privilege or immunity from discovery cognizable at law; (2) do not waive the protections under the attorney-client privilege, work-product doctrine, and any other such privilege or immunity from discovery cognizable at law, even in instances of the inadvertent production of privileged/protected/immunized documents and information; (3) do not admit that such ESI and/or Paper Discovery is relevant to the claims or defenses asserted in this action; and (4) do not concede that such ESI and/or Paper Discovery is admissible, in whole or in part, into evidence at any hearing or proceeding.

F. **Rule 26 Standard.** The parties agree that if a party designates a data source as not reasonably accessible, it shall be assessed using the factors established in Fed. R. Civ. P. 26 (and case law interpreting the same).

G. **Preservation.** Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

H. **Rule 34.** Documents produced pursuant to this order shall be deemed to have been produced in the usual course of business under Federal Rule of Civil Procedure 34(b)(2)(E).

**III. SCOPE OF ESI DISCOVERY**

**A. ESI Not Subject to Production.** The Parties agree that, for purposes of this Stipulation and Order, certain categories of ESI may not be particularly relevant and that, absent a specific request for such ESI, it may be needlessly costly and inefficient for either Party to specifically search for and produce such ESI in response to discovery requests. These categories of ESI include, but are not limited to, the following: (a) deleted computer files or residual data, whether fragmented or whole; (b) data stored in random access memory (RAM), cache memory or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located; (c) data stored on photocopiers, scanners, and facsimile machines; (d) server, system or network logs; (e) electronic data temporarily stored by equipment or attached devices, provided that the data that is ordinarily preserved as part of any report is, in fact, preserved in its ordinary location and form; (f) data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy; and (g) any data, material, or information that is not relevant to a Party's claim or defense or proportional to the needs of the case pursuant to Federal Rule of Civil Procedure 26(b)(1). Notwithstanding the foregoing, if, on the date of this Stipulation and Order, either Party has an established policy that results in the routine preservation of any of the categories of information identified above, such Party shall continue to preserve such information in accordance with its policy and shall produce such information if, as, and when responsive to specific requests. In addition, nothing in this Stipulation and Order shall

preclude the Parties from specifically requesting the categories of ESI identified in this paragraph nor limit the other Party from objecting to that request on any and all available grounds.

B. **Searches for Responsive ESI.** The Parties shall conduct a reasonable search for ESI in media and electronic files and databases that are reasonably likely to contain electronic documents or information responsive to document requests posed to them.

C. **Paper Discovery**. Each Party has an obligation to produce documents that exist in paper format and, to the extent practicable, shall produce such paper documents in PDF format. Said paper documents will be OCR'ed for any extracted text contained in the documents. The scanned documents shall include page breaks just like in the original. Upon request and a showing of good cause (i.e., issues with legibility or formatting), the Producing Party must make the original paper documents available for inspection at a mutually agreeable time and place.

D. **Custodians.** The Parties agree to review the potentially responsive records in the possession, custody, and control of the below Custodians to create the Preliminary Collection (as defined above):

Plaintiff:

| ***Name*** |
|---|
| Russ Curran |
| Michael Pollock |
| Laura Ross |

Defendant:

| ***Name*** |
|---|
| Michael Clark |
| Jason Martin |
| Laura Ross |
| Michael Pollock |
| Sansaka (Sy) Yellamanchali |
| Klas Anderson |
| Jeff Banschbach |

| |
|---|
| Patrick Kuelz |
| Unni Nambiar |
| Monica DuBois |
| Leigh Ann Braswell |
| Ashley Horton |
| Chris Mielke |
| Tom Gregory |
| Carlie Richard |

E. **The Preliminary Collection, Search Terms, the Initial Search Collection, and the Production Set.** The Parties will each prepare, review and agree upon a list of search terms to be applied to ESI collected by the respective Producing Party. Once the search terms and/or search phrases are agreed upon, they shall be applied to the Preliminary Collection to generate the Initial Search Collection. The Parties will each determine the volume of documents that "hit" on each of the search term(s) used to create the Initial Search Collection. If the Producing Party believes that the volume of "hits" on any one term or phrase is notably excessive, particularly in the form of certain repeated words or phrases, it may share information about the number of "hits" with the Receiving Party. In the event of a dispute, the Parties will work, in good faith, to refine the specified search terms/search phrases and then recreate the Initial Search Collection. If the Parties cannot agree on a revised set of search terms, the Parties will jointly seek guidance from the Court to resolve any dispute.

The Parties may then perform a review of the Initial Search Collection for confidentiality, privilege, and responsiveness, and in light of their objections to document request(s) propounded by the Receiving Party arrive at a Production Set. For the avoidance of doubt, nothing herein prevents any Party from using technology assisted review or predictive coding as part of its documents review process. The Party shall then produce, in accordance with the requirements of this Stipulation and Order, the Production Set. The Parties may produce documents included in their respective Production Sets on a rolling basis, in accordance with the governing scheduling

order(s) in this action. Notwithstanding any of the foregoing, the aforementioned search term protocols are not intended to alter a Party's discovery obligations under Fed. R. Civ. P. 26 or the Local Rules to produce documents or ESI that can be located without the need for search terms.

F. **Privilege Log**. The Parties shall each create a privilege log to identify any potentially relevant documents withheld from production either in whole or in part at a mutually agreed time. The Parties agree that, absent a showing of good cause, documents created after April 19, 2023 (the date the Complaint was filed) that are protected by attorney/client privilege and/or work product protection do not need to be listed or identified on a privilege log. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the following methods. For hard copy documents, each party shall create privilege logs using the standard privilege log.

1. Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

a. SUBJECT
b. FILE NAME
c. AUTHOR
d. SENDER/FROM
e. RECIPIENTS/TO
f. CC
g. BCC
h. SENT DATE TIME
i. RECEIVED DATE TIME
j. FILE CREATED DATE TIME
k. FILE LAST MODIFIED DATE TIME
l. BEG BATES
m. END BATES
n. BEG ATTACH BATES
o. END ATTACH BATES

Additional fields to be populated manually and included on the Automated log:

a. PRIVILEGE TYPE (AC, WP or other)
b. REDACTED (a field indicating whether the document has been produced with redactions)

With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. Should the receiving party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the parties may agree or the Court may order.

2. Standard Log. A standard privilege log will include these standard fields: beg bates; end bates; author/sender/from; recipients/to; cc; bcc; date; privilege type; redacted; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other participants identified on the face of the document not already captured in the top email of the email string. Other participants need only be identified for the email strings which are withheld as entirely privileged.

## IV. PRODUCTION

The following provisions shall generally govern the production format for ESI and are subject to the other provisions contained herein.

A. **Bates Numbering.** All ESI and Paper Discovery produced must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length (zero/0-padded) across the entire production; (3) contain no special

characters or embedded spaces; (4) be sequential within a given document; and (5) shall not obscure any underlying content.

B. **Confidentiality Designations.** The confidentiality designation, as specified in the Protective Order entered in the above-captioned action, requested for each document shall be electronically branded on each page of the document (with the exception of documents produced as native format, as specified below) and shall also be indicated in the metadata load file.

C. **PDF Format.** Except as may otherwise be set forth herein, the Parties may produce ESI in standard PDF format at 8.5 x 11-inch page size, except for documents that in the Producing Party's reasonable judgment require a different page size.

**1)** If any materials produced in PDF format as set forth above are illegible, unreadable, or not fully viewable in the designated format, the Receiving Party may request the Producing Party to produce in an alternative format or in the document's Native File format. The Producing Party shall not withhold original, Native Files for such documents absent a showing that such production would be overbroad or unduly burdensome. Should such objections be asserted, the Parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

2) Each Party reserves the right to request that specific documents or files be produced in some other form or format appropriate to the original document. Should objections be asserted, the Parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

D. **Replacement, Modified, and/or Supplemented Files.** Any documents that are replaced, modified, and/or supplemented in later productions shall be clearly designated as such, by (1) providing an overlay file with sufficient explanation as to what such file is and contains; or (2) appending a suffix to the bates/production number of the original file consisting of a period followed by a new zero-padded corresponding page number (i.e., R0001**.001**) and by a letter accompanying the production clearly designating such documents as replacements.

E. **Databases.** Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software. If the Producing Party objects to such form, the parties shall undertake reasonable efforts, and, if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces Microsoft Access or other database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

F. **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any responsive attachments to that Document are produced in the same production set and are identifiable as parent and child.

G. **Attachments.** Only responsive attachments need to be produced. Not responsive attachments may be withheld. If any one attachment to an email is responsive, then the cover email shall be produced for context, regardless of the cover email's responsiveness.

H. **De-NISTing.** Electronic file collection shall be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file

list. Identification of NIST list matches shall be through MD5 Hash values. Notwithstanding the foregoing, De-NISTing shall not be applied to attachments to electronic mail messages.

I. **Duplicate Production Not Required.** A Party need not produce exact duplicates of electronic documents.

J. **Global Deduplication Across Custodians:** The Parties shall de-dupe to the best of their ability across custodians.

K. **Deduplication:** Electronic non-message files shall be de-duplicated based upon calculated MD5 Hash values for binary file content. Messaging files, including emails and instant message files, shall be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. For families, the MD5 Hash is created on the combined hash values of the family members.

L. **Email Thread Analysis.** Email thread analysis may be used to reduce the volume of emails reviewed and produced, at the option of the producing party. If email thread analysis is used, the produced emails must include all of the responsive information from a thread, including attachments. For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

M. **Email Redactions.** In the event that the producing party finds that redactions are needed, the producing party shall redact only privileged information within the body of the email, in addition to the subject line, if it reveals privileged information. Other identifying information, such as the To/From/Bcc, for example, shall not be redacted.

N. **Native Redactions.** In the event that the producing party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such

documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

O. **Specific File Types.**

1) The following files will be produced in Native File format, if they were so received by counsel.

a. Microsoft Excel files and other spreadsheets. To the extent feasible, spreadsheets should be produced with native redactions.

b. Digital photographs will be produced as image files at their original resolution with Bates numbers branded onto them.

c. Video and audio files, schedule files (e.g., Primavera, etc.), and other digital media not covered above (i.e., CAD/AutoCAD, etc.) shall be produced in their Native File format. If the audio files are maintained in a non-standard format, they should be produced in a standard audio format, including but not limited to MP3 or WAV format.

2) Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

P. **Native Format.** Documents produced in Native File format should be accompanied by an image (PDF) placeholder that contains the beginning Bates number and

confidentiality designation. Wherever feasible, the producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production.

Q. **Custodian Information.** The Parties shall use their best efforts to ensure Custodian information be populated for hard copy (paper) documents and loose electronic documents by the person or department from which the document was collected. If possible, custodian information for emails should be populated by the name of the person from whom they were collected. The parties may populate a calculated custodian field for email and electronic documents where the custodian field cannot be identified through the collection process. The custodian field for email may be populated with the Company name only when the company has a consolidated email server that does not preserve "custodian" information.

R. **Non-English ESI.** Textual information associated with ESI will be produced at least in the language in which it is kept in the usual course of business. This protocol does not affect translation of documents that may be produced in discovery.

S. **Method of Production.** The parties agree that documents may be produced via secure file transfer or encrypted media.

T. **PDF Settings.** Documents produced in PDF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

U. **Load Files**: The images shall be accompanied by (i) the appropriate Load Files to accommodate the other Party's counsel's document review platform, and (ii) a "DAT load file" which will populate Metadata fields identified in TABLE 1 below, except with

metadata redacted in whole or in part on grounds of privilege, in a searchable flat database environment, containing one line for each document.

V. **Metadata and Metadata Fields.** The Parties agree to produce, if available on documents, the Metadata listed on TABLE 1, below.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**TABLE 1**

| **Field Name** | **Description** | **Doc Type**[1] |
|---|---|---|
| PRODBEG | First Bates number of each document being produced | All |
| PRODEND | Last Bates number of each document being produced | All |
| BATESRANGE | Full Bates Number range (production number) | All |
| PARENTID | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | All |
| BEGATTACH | First Bates number of family range (will not be populated for documents that are not part of a family) | All |
| ENDATTACH | Last Bates number of family range (will not be populated for documents that are not part of a family) | All |
| CUSTODIANS | Name of person or data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.). Department or organization name for non-electronic documents or documents that are accessible for editing by more than a single user on a shared network drive. | All |
| EMAILAUTHOR | Sender of an email | Email |
| RECIPIENTS | Addressee(s) of an email | Email |
| CC | Recipient(s) copied on an email | Email |
| BCC | Recipients blind copied on an email | Email |
| EMAILSUBJECT | Subject line of the email | Email |
| EMAILSENTDATE | Date the email was sent | Email |
| EMAILSENTTIME | Time the email was sent | Email |
| EMAILRECEIVEDDATE | Date the email was received | Email |
| EMAILRECEIVEDTIME | time the email was received | Email |
| DOCAUTHOR | Author of document | Edocs |
| CREATEDATETIME | Date and time the document was created (may be parsed into separate fields) | Edocs |
| LATEMODDATETIME | Date and time the document was last modified (may be parsed into separate fields) | Edocs |

1 As used herein, "Edocs" refers to all non-message ESI.

| | | |
|---|---|---|
| FILESIZE | Size of application file document/email in KB | All |
| FILEPATH | Email: Full file path where original email was stored<br>Edocs: Full file path where application file was stored | All |
| FILEEXTENSION | File extension of the native file | Edocs |
| FILENAME | Name of the application file, including file extension | Edocs |
| DESIGNATIONS | Confidentiality designation assigned to the document pursuant to protective order in this case | All |
| NATIVEFILE | Link to the native email or application file | All |
| MD5HASH | Hash value of each email or application file | All |
| EMAILMESSAGEID | The value or a digital signature of email | Email |
| TITLE | Title field value extracted from the metadata of the original file | All |
| | | |
| TEXTFILE | File path for OCR or Extracted Text files | All |
| CUSTODIANS | Unless CUSTODIAN is a multi-value field, additional custodians who possessed a duplicate copy of an email or application file | All |

W. **Paper Discovery**. Paper documents shall be produced as PDF files (consistent with the specifications set forth herein). The production shall include the appropriate Load File which will, at a minimum, contain the following Metadata fields:

1) Beginning Production Number (ProdBeg);
2) Ending Production Number (ProdEnd);
3) Beginning Attachment Production Number (BegAttach);
4) End Attachment Production Number, (EndAttach);
5) Custodian/Source;
6) Confidentiality (if applicable);
7) Document Type;
8) Page Counts; and
9) OCR.TXT file.

In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).

## V. SUBPOENAS TO THIRD PARTIES

A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and state that the subpoenaed party shall use its best efforts to produce documents in accordance with the specifications set forth herein. If the subpoenaed party does not comply with the terms of this Stipulation and Order, it shall confer with the Issuing Party and, if the subpoenaed party and the Issuing Party cannot reach agreement, the subpoenaed party may seek relief from the Court. The Issuing Party shall produce any documents obtained pursuant to a third-party subpoena to all other Parties within

seven calendar days of receipt, and in the form that such documents were received from the subpoenaed party. Nothing in this Stipulation and Order is intended to or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

## VI. MISCELLANEOUS

A. **Headings.** All headings used in this Stipulation and Order are for descriptive purposes and shall not be interpreted to supersede or contradict the contents of this Stipulation and Order.

B. **Destruction or Return of ESI.** Any ESI produced herein shall be and remain the property of the Producing Party, and at the conclusion of this action, including any and all appeals, all such ESI produced shall be destroyed within 60 days.

C. **Effective Duration**. The terms of this Stipulation and Order shall survive and remain in force and in effect after the final termination of this action regarding any retained ESI, including the contents thereof.

D. **Modification.** Nothing herein shall prevent the Parties from modifying this Stipulation and Order with respect to ESI and any such modifications shall be memorialized in an amended stipulation and order.

STIPULATED AND AGREED:

*/s/ Thomas P. Howard*
Thomas P. Howard (BBO #
THOMAS P. HOWARD, LLC
842 W. South Boulder Rd. #100
Louisville, CO 80027
Telephone: (303) 665-9845
*thoward@thowardlaw.com*

Benjamin Stern (BBO # 646778)
bstern@nutter.com
Nutter McClennen & Fish LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

*Counsel for Plaintiff*
*Single Path Solutions, LLC*

*/s/ Jarrod D. Shaw*
Nellie E. Hestin (BBO #676886)
Jarrod D. Shaw (pro hac vice)
MCGUIREWOODS LLP
260 Forbes Avenue
Pittsburgh, PA 15222-3142
Tel: (412) 667-6000
Fax: (412) 667-6050
nhestin@mcguirewoods.com
jshaw@mcguirewoods.com

Aaron F. Jaroff (pro hac vice)
MCGUIREWOODS LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020-1104
Tel: (212) 548-2133
Fax: (212 715-2310
ajaroff@mcguirewoods.com

*Counsel for Defendant DeliverHealth Solutions, LLC*

Dated: December __, 2024

IT IS SO ORDERED this ___ day of December, 2024.

________________________________
Leo T. Sorokin
U.S. District Court Judge