**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

SINGLE PATH SOLUTIONS, LLC
Plaintiff
v.
DELIVERHEALTH SOLUTIONS, LLC
Defendant.

Civil Action No. 24-cv-11252-LTS

**SINGLE PATH SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ............................................................ 1

III.  STANDARD FOR SUMMARY JUDGMENT ................................ 1

IV.   ARGUMENT ................................................................................... 2

    A.    Defendant's Claim of a Lack of Essential Terms is Factually Disputed ......... 2

        **1.    Defendants Claim That The "Oral Agreement" Was Undefined Is
        Factually Disputed And Legally Without Support** ........................................ 2

        **2.    Defendant's Allegation That The Consideration Provided Was
        Undefined Is Factually Disputed And Legally Without Support** ................. 4

        **3.    SPS Factually Disputes That Any of Its Actions "Confirm[ed]" There
        is No Oral Contract.** ................................................................................... 8

        **4.    SPS Disputes That Defendant Ever Made The Approval Of AHP A
        Requisite Element Of The Employment Model Purchase Agreement** ........ 8

    B.    Defendant's Motion for Summary Judgement Pertaining to Fraud and/or
    Negligence Raises Multiple Factual Disputes and Must be Denied. ........................ 10

    C.    Defendant's Summary Judgment Motion Regarding Defendants Breach of the
    NDA is Factually Disputed and Must Be Denied .................................................... 13

    D.    Defendant's Summary Judgment Motion Regarding Promissory Estoppel is
    Factually Disputed and Must Be Denied. ............................................................... 14

    E.    Defendant's Summary Judgment Motion Regarding Its Breach of the

Covenant of Good Faith and Fair Dealing Must Be Denied....................................... 15

F.    Defendant's Summary Judgment Motion Regarding Its Breach of the Colorado Uniform Trade Secret Act and Defense of Trade Secret Act Must Be Denied........................................................................................................................... 15

    1.    Defendant Acquired the Trade Secrets Using Improper Means .............. 15

    2.    SPS Identified Protectable Trade Secrets................................................. 16

G.    DHS Is Not Entitled to Summary Judgment on SPS's Unjust Enrichment Claim................................................................................................................................ 20

V.    CONCLUSION........................................................................................................... 20

## TABLE OF AUTHORITIES

**Case**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).................................................................1

*Armstrong v. Rohm & Haas Co.,* 349 F. Supp. 2d 71 (D. Mass. 2004).....................................5, 6

*Bourque v. Rollins, Inc.,* 764 F. Supp. 3d 11 (D. Mass. 2025).................................................2, 5, 6

*Cashman Dredging & Marine Contracting Co., LLC v. Belesimo,* 759 F. Supp. 3d 120 (D. Mass. 2024) ...............................................................................................................................16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ...........................................................................1

*Costonis v. Medford Housing Authority,* 343 Mass. 108, 176 N.E.2d 25 (1961).........................10

*Crosby Legacy Co., LLC v. TechnipFMC plc,* 2021 WL 4452867 (D. Mass. Sept. 29, 2021) .....10

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.,* 455 Mass. 458 (2009)................................14

*Cygan v. Megathlin,* 96 N.E.2d 702 (Mass. 1951) .......................................................................2

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823 (10th Cir. 1993)..............................15

*Lawrence v. Cambridge,* 422 Mass. 406 (1996)...........................................................................2

*LeBlanc v. Great American Ins. Co.,* 6 F.3d 836 (1st Cir. 1993) ..................................................1

*LiDonni, Inc. v. Hart,* 355 Mass. 580, 246 N.E.2d 446 (1969) ....................................................6

*Lowell Housing Authority v. PSC International, Inc.,* 692 F. Supp. 2d 180 (D. Mass. 2010) ......10

*Masingill v. EMC Corp.,* 449 Mass. 532 (2007)..........................................................................14

*Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496 (1991)..........................................................1

*Mayo v. Schooner Capital Corp.,* 825 F.2d 566 (1st Cir. 1987)....................................................2

*Nelson v. Energy Exch. Corp.,* 727 F. Supp. 59 (D. Mass. 1989) ................................................14

*Port-a-Pour, Inc. v. Peak Innovations, Inc.,* 49 F. Supp. 3d 841 (D. Colo. 2014) ........................15

*Rhode Island Hosp. Tr. Nat'l Bank v. Varadian,* 419 Mass. 841 (1995)........................................14

*Salamon v. Terra,* 394 Mass. 857 (1985)..........................................................................20

*Santagate v. Tower,* 64 Mass. App. Ct. 324, 833 N.E.2d 171 (2005) ...........................20

*Saturn Sys., Inc. v. Militare,* 252 P.3d 516 (Colo. App. 2011).........................15, 16, 18

*Silver v. Graves,* 210 Mass. 26 (1911)..............................................................................2

*T.F. v. B.L.,* 442 Mass. 522, 813 N.E.2d 1244 (2004)......................................................6

*Vita v. Berman, DeValerio & Pease, LLP,* 81 Mass. App. Ct. 748 (2012) .....................7

## I.    INTRODUCTION

Stated simply, Defendant's Motion for Summary Judgment ("Motion") should not have been filed. This case is rife with disputed facts, as is obvious from the Motion itself and the 243 allegedly "undisputed" facts submitted by Defendant, the majority of which have in fact been disputed in Plaintiff Single Path Solutions, LLC's ("SPS") Responses to Defendant's allegedly undisputed facts and the plethora of deposition testimony, exhibits, party affidavits and other evidence cited in support of the same. For this reason, the Motion should be disposed of quickly.

For the reasons stated in Plaintiff's Responses to Defendant's allegedly Undisputed Facts, as well as for the reasons set forth below, Defendant's Motion must be denied.

## II.    FACTUAL BACKGROUND

Defendant incorporates by reference its Response to the Statement of Material Facts filed simultaneously with this memorandum as if set forth fully herein.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.Rule Civ.Proc. 56(c). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). [S]ummary judgment will not lie if the dispute of a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw "all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 520 (1991). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party." *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993).

## IV.    ARGUMENT

### A.    Defendant's Claim of a Lack of Essential Terms is Factually Disputed

"The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Bourque v. Rollins, Inc.,* 764 F. Supp. 3d 11, 15 (D. Mass. 2025). Oral and written contracts must be "of reasonable certainty and not pristine preciseness," in order to be enforceable. *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 570 (1st Cir. 1987) (finding that oral contract for commissions on dam installation was not so vague as to be unenforceable) (citations omitted). A contract is not to be struck down if "one of its material provisions is stated in broad and general terms" so long as "it can be interpreted with reasonable certainty so that the rights and obligations of the parties can be fixed and determined." *Cygan v. Megathlin*, 96 N.E.2d 702, 703 (1951). Further, "a contract will not fail for indefiniteness . . . **in particular where, as here, one party has already performed**." *Silver v. Graves,* 210 Mass. 26, 28 (1911) (Emphasis added). Further, terms can be clarified and terms supplemented through a course of performance of a contract, even without explicit incorporation. *See Lawrence v. Cambridge,* 422 Mass. 406, 411 (1996) ("in an ordinary contract, where matters are left open the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance").

### 1.    Defendants Claim That The "Oral Agreement" Was Undefined Is Factually Disputed And Legally Without Support

On March 28, 2021, Clark proposed to SPS ███████████████████████ ████████ ("EMPA").  Disputed Statements of Fact ("Disputed SMF") ¶¶ 34, 37, 51, 55 and 60. SPS agreed to the same. *Id*. Consideration for the same was then exchanged from SPS to Defendant in the form of transferred assets and contractual services for 11 months, to the direct and significant benefit of Defendant. Disputed SMF ¶¶ 24, 34, 51, 60, 193, 202, 208.  As part of that agreement, SPS Members took employment positions for Defendant to devote full-time efforts to the transfer of

assets and knowledge and the development of Defendant's revenue integrity system.  Disputed SMF ¶¶ 58, 193.  Defendant provided consideration for SPS's transfers, ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ Disputed SMF ¶¶ 34, 36, 51, 60, 193, 202-203, 205 and 207.  SPS agreed to those terms.

Defendant, after 11 months of performance by SPS and after making repeated written and oral promises of a formalized agreement, acted in direct breach, to its own enrichment and to the detriment of SPS. Defendant now alleges that SPS ██████████████████████████████ ██████████████████. That allegation is disputed. SPS states exactly the contrary, as detailed in its Disputes to Defendant's SMF ("Disputed SMF"). Disputed SMF ¶¶ 34, 207. SPS states that ████████████████████████████████████████████████████ ████████████████████████████ ███ ████, and expressly conducted via subsequent transfer of assets, know-how, taking of requisite employment ███████████████████████ ███████████████. Disputed SMF ¶¶ 34, 207.

Defendant further alleges, again inaccurately, that Plaintiff drafted the original ███████ ████ Disputed SMF ¶¶ 189-191. In fact, that was drafted by Jason Martin from Defendant and emailed to Mr. Curran on November 11, 2021. Disputed SMF ¶¶ 189. Martin, who was not a participant in the negotiations and did not work for Defendant in March 2021 at the time of the EMPA, wrote a section of the ██████████████ containing the phrase ███████████████████ ███████████████████████ *Id*. In fact, as negotiated in March 2021, this was an EMPA for the purchase of SPS, its assets, knowledge and the employment of its key members, and SPS had been performing in direct reliance on the same since that time. Disputed SMF ¶¶ 34, 51, 60. Reflecting the same, Mr. Yellamanchali ("Yella") from Defendant sent an internal email to Clark

on █████████, that █████████████████████████ to which Clark agreed. Disputed SMF ¶¶ 65, 188.  Finally, per its terms this was a purchase of SPS in its entirety, as it involved 11 months of SPS training of Defendant employees as to SPS's trade secrets and operations, a transfer of all SPS assets to Defendant, and the transfer of all SPS members to Defendant. Farnsworth, Contracts § 3.28 at 204 (4th ed.2004).[1] Disputed SMF ¶¶ 34, 51, 60.

## 2.    Defendant's Allegation That The Consideration Provided Was Undefined Is Factually Disputed And Legally Without Support

Defendant's allegation that the consideration to be provided was undefined is factually disputed.  Disputed SMF ¶¶ 55, 56, 57, 58, 59, 60, 83, 202, 207, 208. First, SPS negotiated no "oral agreement" with Defendant. Rather, the agreement reached in late March 2021 was reflected both orally and in writing, via email and text, and detailed over nearly a year by the actual actions of the parties in reliance on the same. Disputed SMF ¶ 55. Second, the preparation for the employment of SPS Members dates and discussion of █████████ began early on, and the finalization of specific employment dates occurred in November 2021, with the specified █████████ █████ finalized on December 2, 2021. *Id.* Third, Defendant's claim that no valuation of SPS was discussed prior to December 2, 2021, is disputed, as in fact, Clark advised SPS █████████ ██████████████████████████████ Disputed SMF ¶ 57. Finally, Defendant's allegation that the hiring dates of the key parties at SPS was unknown is disputed and inaccurate, as Defendant and SPS began scheduling those dates starting in June 2021, specifically set them for November 2021, and performed the hiring as scheduled in that month. Disputed SMF ¶ 60.

---

[1] Furthermore, Defendant in its Motion misstates the █████████ as stating that ████████████ ████████████████████" That is both inaccurate and misleading. What the █████████ <u>actually</u> states is "█ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ (Emphasis added). Disputed SMF ¶¶ 186-190.

It is also disputed that the ████████ reached on December 2, 2021, leaves any essential terms unaddressed. As detailed above, "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Bourque v. Rollins, Inc.,* 764 F. Supp. 3d 11, 15 (D. Mass. 2025). ████████████████████████████████ ████████████████████████. Disputed SMF ¶¶ 34, 60. Plaintiff immediately began providing consideration by transferring assets, providing services, transferring know how and having key SPS Members hired by Defendant. Disputed SMF ¶¶ 34, 60, 196. Defendant partially performed by hiring Ms. Ross and Mr Pollock in November 2021. Disputed SMF ¶ 196. Clark scheduled a meeting with Mr. Curran on December 2, 2021, at which he for Defendant specified ████████████████ that was accepted by SPS. Disputed SMF ¶ 202. Specifically, Clark sent a text to Martin on ████████, discussing meeting with Mr. Curran to discuss ██ ████████████████████████. Disputed SMF ¶ 195. On ████████, Clark again texted Martin, stating that ████████████████ and that he wanted to ████████. *Id.* The next day, December 2, 2021, Clark, as Defendant's CEO, told Mr. Curran that Defendant DeliverHealth was ████████████ ████████████████████████████████ ████████████████████████ ████████████████████████ ████████████. Disputed SMF ¶ 202. Mr. Curran, who was authorized by the other SPS Members to conduct this meeting, accepted Defendant's offer. *Id*. Both Ms. Ross and Mr. Pollock approved of the offer as well. *Id.*

Defendant primarily relies on *Armstrong v. Rohm & Haas Co*., 349 F. Supp. 2d 71 (D. Mass. 2004) to support its arguments. However, that case is directly distinguishable from the case at hand. In *Armstrong* the sole "contract" was a future promise to perform. Specifically, in that case

"Defendant, through Mr. Payne, promised to provide Plaintiffs with as much outsourced work as they could perform." *Armstrong v. Rohm & Haas Co., Inc.,* 349 F. Supp. 2d 71, 78 (D. Mass. 2004). No further agreement was alleged. Under those undefined and unperformed circumstances, the court could find no basis to enforce the alleged agreement. There is no comparison with the facts at hand, in which SPS provided nearly a year of substantial performance in the form of both assets and services, and Defendant provided partial performance in the form of employment, pursuant to the terms of a contract repeatedly discussed both orally and in writing.

Defendant alleges that the only evidence of the █████████████████ is that alleged by Mr. Curran from the December 2, 2021, meeting. That is incorrect. Mr. Curran took notes at that meeting and specifically wrote down the ████████ offering as well as the █████████████. Disputed SMF ¶¶ 34, 37, 51, 60, 202: Ex. 201.

"The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Bourque v. Rollins, Inc.,* 764 F. Supp. 3d 11, 15 (D. Mass. 2025). Here, each of those elements have been met under the facts at hand, as an offer was made by Defendant, accepted and carried out for nearly a year by SPS, and Defendant then abruptly failed to perform as agreed, to the direct detriment of SPS. Defendant is bound, both by the plain terms of the EMPA as well as by the lengthy and extremely well documented course of performance of the parties between March 28, 2021, and February 28, 2022, which was to the direct benefit of Defendant and the direct detriment of SPS. Under these circumstances there is also an implied contract in fact arising from the conduct and relationship of the parties. As the Massachusetts Appeals Court has explained:

> In the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties. An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit." (Citations omitted.) T.F. v. B.L., 442 Mass. 522, 526-527, 813 N.E.2d 1244 (2004). See LiDonni, Inc. v. Hart, 355 Mass. 580, 583, 246 N.E.2d 446 (1969) ("[A] contract implied in fact may be found to exist from the conduct and relations of the parties").

*Vita v. Berman, DeValerio & Pease, LLP*, 81 Mass. App. Ct. 748, 754 (2012). Here, in addition to the contract negotiated by the parties detailed above, there is additionally an implied contract in fact conferred from SPS to Defendant, as is evident by SPS's cessation of the building of its own platform and, from March 28, 2021 to February 28, 2022, transferring assets and know how, spending hundreds to thousands of hours of teaching, and working for Defendant, in reasonable reliance on the promise of payment from the same. Disputed SMF 34, 60, 184 and 202.

Defendant now attempts to argue that the type of stock needed to be determined. This is disputed. The type of stock to be issued was determined. The sale as agreed was ███████████ ████████████████████████████████████████████████████████████████████████ ███████████████ The sculpting of this agreement had already been discussed in emails between Clark and Yella a month earlier, on ██████████████, in which Clark expressly stated that he was ████████████████████████████████ Disputed SMF 188. The shares issued would have been ████████████████████████████████ Second, Defendant argues that the events that would have triggered ████████ are not defined. This is also disputed, as the ███████████████████████████████████████ *drafted by Defendant* as a ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████ Actual ████████ would have been based on future performance, which failed to occur solely due to Defendant's breach. Disputed SMF 189, 191. Finally, Defendant alleges that the "nature of the ███████████████████ is not stated. This is also disputed, as it was expressly written up in the same ████████████ as ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████. *Id.*

Here, SPS has already performed for 11 months in good faith in reasonable reliance upon Defendant's multiple written and oral representations.  Defendant took everything SPS provided for nearly a year and thereafter has used the same, marketing the <u>exact</u> SPS revenue integrity system provided by SPS, for which it failed to pay, in direct breach of contract.

### 3. SPS Factually Disputes That Any of Its Actions "Confirm[ed]" There is No Oral Contract.

No action taken by SPS demonstrated there was not an agreement between the parties. To the contrary, the actions taken by SPS from March 28, 2021, through February 28, 2022, demonstrate precisely the opposite. First, SPS at no time ███████████████████ SPS disputes each of defendant's factual allegations on which it relies pertaining to the same. Disputed SMF 18, 24, 30 and 83. Second, SPS disputes Defendant's allegations regarding the ███████ ████████████ briefly discussed with Defendant as both factually inaccurate and unconnected to the sale being performed under the EMPA, thereby creating additional issues of fact.  Disputed SMF ¶¶ 62-65. Contrary to Defendant's implied allegations, from March 28, 2021, through February 28, 2022, SPS continued working with Defendant pursuant to the EMPA.  Third, Defendant's claims as to "draft" employment letters are disputed as tangential and irrelevant, as <u>no such language was placed</u> in Ms. Ross or Mr. Pollock's <u>actual</u> employment letters. Disputed SMF ¶¶ 198, 200. Finally, Defendant references an email to Mr. Curran that is not relevant to <u>any</u> actual hiring. Mr. Curran was never sent any such employment letter, and his hiring was scheduled for March 2022.

### 4. SPS Disputes That Defendant Ever Made The Approval Of ██████A Requisite Element Of The ███████████████████

Defendant inaccurately alleges that Clark on December 9, 2021, after the negotiation of the equity amount, states in a text to Curran ████████████████████████████████ ████████ That is false and factually disputed.  This allegation directly conflicts with the actual facts of the case and with Clark and Defendant's actions over the 18 month period from November

2020 through February 28, 2022.  Disputed SMF ¶¶ 34, 36, 51, 60, 202-203, 208, 215-217, 222,

228. The factual reality is that Clark as CEO of Defendant **never**, in 18 months of dealing with SPS,

advised that Defendant ████████████████████ to close this agreement. *Id*. No document

states anything of the sort, and there was nothing resembling any such ████████████ Had

such alleged ████████ been required, it needed to have been disclosed in March 2021, *before* SPS

began ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. The reality is no such disclosure ever

occurred, and SPS reasonably provided services, including the training and transfer of trade secrets

to ████ pursuant to the direct direction of Defendant (the alleged purchaser), through the end of

February 2022. Reflecting this reality, Defendant's abrupt termination of SPS – as explained by

Defendant - was based on reasons utterly unrelated to any approval by ████.  Disputed SMF ¶¶ 34,

36, 51, 60, 202-203, 205 and 208, 215-217, 222, 228.

     Defendant alternatively attempts to argue that Clark lacked actual or apparent authority to

bind SPS because ████ never "confirmed" that Clark had such authority. This is disputed and

legally without merit. ████████████████████ that SPS never once dealt with in 18 months.

Clark was the CEO of DeliverHealth. He was the person that handled all relevant decisions related

to SPS, including the initial negotiations and final agreement with SPS regarding the EMPA, the

hiring of Ms. Ross and Mr. Pollock, and the December 2, 2021, negotiation and agreement

regarding ████████████████ At no time during that period was SPS ever told by Defendant

████████████████ any of Clark's decisions. Quite to the contrary, immediately

after entering into the EMPA negotiated by Clark, SPS was encouraged by Clark to transfer trade

secrets, intellectual property to Defendant and to begin providing training Defendant's employees

via the transfer of SPS know how.  Disputed SMF ¶¶ 34, 36, 50, 54, 60, 202-203, 205, 208 and 215-

217. Reflecting the same, Mr. Curran was explicitly told by Clark that ███████████

████████████████████████ with regards to the EMPA. Disputed SMF ¶¶ 34, 36, 51, 60, 202-

203, 208, 215-217, 222, 228.

In *Costonis v. Medford Housing Authority,* 343 Mass. 108, 176 N.E.2d 25 (1961), the court

held that the executive director of the Medford Housing Authority had both implied and apparent

authority to orally agree to modifications to a contract, notwithstanding a contract provision

requiring all changes to be made pursuant to a written order of the Medford Housing Authority.

Following up that decision, in *Lowell Housing Authority v. PSC International, Inc*., 692 F.Supp.2d

180 (D. Mass. 2010), the court stated that:

> Apparent authority is that authority resulting from conduct by the principal which
> causes a third person reasonably to believe that a particular person ... has authority to
> enter into negotiations or to make representations to his agent . . . When an individual
> is in charge of particular transaction, he is thought to have broad apparent authority to
> bind his principal to that transaction.

Here, Clark as *Chief Operating Officer* was running Defendant. His duties included managing all

operations of Defendant, including the regular negotiation of contracts. That created every reason

for SPS to reasonably believe that he had the authority to enter into the contract he had proposed,

negotiated and agreed to, and to perform in accordance with the same, precisely as occurred. A

reasonable person under similar circumstances would have had no reason to believe that Clark

lacked authority to contractually bind a third-party.

Defendant's Motion pertaining to SPS's claim for breach of contract constitutes a factual

dispute that must go to the jury, for which reason it must be denied.

### B. Defendant's Motion for Summary Judgement Pertaining to Fraud and/or Negligence Raises Multiple Factual Disputes and Must be Denied.

A claim for fraudulent misrepresentation entails a false statement of material fact made to

induce the plaintiff to act and reasonably relied upon by him to his detriment. *Crosby Legacy Co.,*

*LLC v. TechnipFMC plc*, 2021 WL 4452867, at *4 (D. Mass. Sept. 29, 2021). Here, Defendant

committed intentional fraud or acted with wanton negligence, to the direct detriment of SPS. On November 19, 2020, Defendant began pressing SPS to stop building the SPS RI Platform and SaaS software designed and being built and instead integrate its assets into Defendant. In December 2020 and January 2021, Clark for Defendant fraudulently or negligently represented that Defendant wanted to purchase SPS, its assets, and the knowledge of Mr. Curran, Ms. Ross, and Ms. Pollock. As a direct result of those representations, a non-disclosure agreement was entered into and a two-day, detailed analysis of SPS was scheduled and conducted on March 25-26 in Madison, Wisconsin. Disputed SMF ¶¶ 18, 22, 34, 36, 51, 60, 202-203, 208, 215-217, 222, 228.

Immediately thereafter, on March 28, 2021, Defendant either fraudulently or negligently agreed to the EMPA detailed *supra*, pursuant to which Defendant represented that it was going to purchase SPS and all of its assets, including its transferred assets, its know-how and the employment of its members. Disputed SMF ¶ 34, 37, 51, 60. On March 29, in reasonable reliance on Defendant's representations, SPS began confidentially transferring its trade secrets and highly confidential assets to Defendant. *Id*. Those transfers included █████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████. Disputed SMF ¶ 18, 191, 202, 208. SPS in May 2021 began training Defendant's employees, talking to potential Defendant sales leads and developing Defendant's marketing. Disputed SMF ¶ 18, 34, 51, 59, 60. SPS in August 2021 requested answers regarding Defendant's delay on a written agreement memorializing the EMPA; Jason Martin flew to Colorado and fraudulently or negligently misrepresented that Defendant was committed to the EMPA. Disputed SMF ¶ 88.

On December 2, 2021, Clark met with Curran. Curran took notes. Disputed SMF ¶ 202. Clark alleged to offer the SPS Members ████████████████████████. This was a follow-up to the alleged EMPA issued in March and came shortly after Defendant hired Ms.

Ross and Mr. Pollock, allegedly pursuant to the EMPA. Mr. Curran, authorized by the other SPS Members, reasonably accepted Defendant's offer in good faith. *Id*.  This was a fraudulent or negligent misrepresentation made to keep SPS transferring assets and providing assets and services. Four days later, on December 6, Mr. Curran emailed Clark and asked, ███████████ █████████████████████████████████████ *Id.*  Three days after that, on December 9, 2021, Clark stated he had <u>already</u> reviewed the agreement with the company investors and stated that ████████████████████ *Id*.  Disputed SMF ¶ 202. (Emphasis added). The same day, Clark advised he would provide a term sheet to memorialize the agreement. *Id*.  Clark then texted that they would have a formalized version of the agreement written up by the end of January. *Id*. Meanwhile, in January and February 2022, Martin made fraudulent statements that a memorialization was being prepared. *Id.* Each of these representations from Defendant was false or negligent. Despite representations starting in March 2021 and continuing without cessation through February 18, 2022, no agreement was drafted, much less formalized in writing. Abruptly, on February 28, 2022, Defendant then cut ties with SPS and orally claimed it was pulling back and not going into revenue integrity. Disputed SMF ¶ 211-213, 219-221, 228.  That claim was false.

Plaintiff's claims of fraud are explicitly stated and detailed over a lengthy period of time, with specific details as to dates, times, events and circumstances. Defendant's sole argument constitutes a reiteration of its response to the breach of contract claim. Plaintiff's responses to the arguments regarding breach of contract are set forth in detail, *supra*, both factually and legally, and are reasserted here. That said, fraud and/or negligence comprise *alternative* claims to breach, which is how they are pled.  Defendant made <u>multiple</u> fraudulent and/or negligent statements on which Plaintiff reasonably relied, for over a year, to its direct and substantial detriment.

First, in reasonable reliance on Defendant's fraudulent statement that it wanted to purchase SPS and its assets, SPS ceased building its platform and entered into a fraudulent contract with

Defendant, to its direct detriment. Second, in reasonable reliance on Defendant's fraudulent offer to purchase SPS and its assets utilizing its proposed EMPA, SPS agreed to the same and conducted eleven months of asset transfers and provision of services, only to receive no contractual payment for the same. Third, when SPS expressly asked in August 2021 what was causing Defendant's delay in obtaining a written contract, SPS was fraudulently told that Defendant was committed to the EMPA.  Fourth, when SPS met with Clark to finalize the equity portion of the EMPA, Defendant offered ███████████ and SPS accepted the same. No such payment was ever received. Each of these representations on which SPS relied constituted fraudulent or negligent statements on which SPS reasonably relied.

These claims create a complex web of false or negligent factual events, all or most of which are in factual dispute. Under such circumstances these claims must go to the jury and summary judgment each should be denied.

**C.    Defendant's Summary Judgment Motion Regarding Defendants Breach of the NDA is Factually Disputed and Must Be Denied**

Defendant ignores its own actions and the actual facts for the purpose of its Motion. On March 28, 2021, Defendant and SPS agreed to the terms of  the EMPA. Disputed SMF ¶ 34. Defendant also directed ██████████████████████: in January 2022**,** Martin "told" SPS to share ████████████████████ after which SPS taught ██████████ how to ██████████████████████ for Defendant's platform. Disputed SMF ¶ 208. Against that backdrop, a reasonable jury could find Defendant breached the NDA by using and disclosing SPS's trade secrets after it had agreed to acquire SPS and then retaining and exploiting those secrets even after it refused to acquire SPS—conduct far outside the NDA's ████████████. Disputed SMF ¶ 114, 139, 141, 157. These facts create triable issues that Defendant used and disclosed SPS's trade secrets well beyond permitted ████████ because Defendant had agreed to purchase SPS yet failed to consummate the acquisition.

Moreover, a reasonable jury could find fraudulent inducement: Defendant induced SPS to share and allow Defendant to share SPS's trade secrets with ███████ ███████ because SPS reasonably believed Defendant was acquiring SPS; had SPS known Defendant was not, it would not have authorized any ███████ disclosures. Massachusetts law sets out the elements of fraud: 1) false material representation (or misleading half-truth), 2) knowledge of falsity, **3)** intent to induce reliance, **4)** reasonable reliance, and 5) damage—which a jury could find on this record. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471–72 (2009); *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007). Massachusetts courts also recognize promissory/detrimental reliance where a party reasonably acts on assurances of future performance; Defendant's offer of promises of a **"**formal agreement**"** and January 2022 closing support SPS's reliance. See *Rhode Island Hosp. Tr. Nat'l Bank v. Varadian*, 419 Mass. 841, 848–50 (1995) (promissory estoppel requires an unambiguous promise and reasonable reliance).

On these facts, Defendant's post-EMPA use and third-party disclosure of SPS's trade secrets, coupled with its failure to consummate the acquisition it had promised, present triable issues under both the NDA and Massachusetts fraud principles; summary judgment on Count IV should be denied.

### D.    Defendant's Summary Judgment Motion Regarding Promissory Estoppel is Factually Disputed and Must Be Denied.

Plaintiff incorporates by reference each of its factual and legal arguments set forth, *supra*, in its Response to Defendant's argument regarding breach of contract, as well as all disputed facts and supporting exhibits and affidavits cited in the same and/or referenced from the Disputed SMFs. "A promise which the promissor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." *Nelson v. Energy Exch. Corp.*, 727 F. Supp. 59, 62 (D. Mass. 1989) (citing Restatement (Second) of Contracts § 90(1). Here, there is no

14

question that SPS reasonably relied on Defendant's repeated promises, ceasing development, transferring its assets and providing nearly a year of services, to its direct and lasting detriment. Accordingly, Defendant's Summary Judgement regarding this claim should be denied.

### E. Defendant's Summary Judgment Motion Regarding Its Breach of the Covenant of Good Faith and Fair Dealing Must Be Denied

Defendant again reiterates its arguments stated with regards to breach of contract. Therefore, Plaintiff incorporates by reference each of its factual and legal arguments set forth, *supra*, in its Response to Defendant's argument regarding breach of contract, as well as all disputed facts and supporting exhibits and affidavits cited in the same and/or referenced from the Disputed SMFs.

### F. Defendant's Summary Judgment Motion Regarding Its Breach of the Colorado Uniform Trade Secret Act and Defense of Trade Secret Act Must Be Denied

Defendant's arguments are wrong on the law and wrong on the law and wrong on the facts, and are disputed in their entirety.

#### 1. Defendant Acquired the Trade Secrets Using Improper Means

The state statute at issue is the Colorado Uniform Trade Secret Act ("CUTSA"). The federal trade secret statute at issue is the Defend Trade Secrets Act ("DTSA"). The standards are very similar. To prove misappropriation of a trade secret pursuant to CUTSA, a plaintiff must show: (i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 847 (10th Cir. 1993). The Colorado Courts of Appeals have ruled that "[t]here is <u>no</u> requirement in Colorado's [UTSA] that there be <u>actual use or commercial implementation</u> of the misappropriated trade secret for damages *"use'* [to] accrue. Misappropriation consists only of the "improper disclosure or acquisition of the trade secret." . . . *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 525 (Colo. App. 2011); see also *Port-a-Pour, Inc. v. Peak Innovations, Inc.,* 49 F. Supp. 3d 841, 868 (D. Colo.

2014)(same). (Emphasis added).

Similarly, pursuant to the DTSA, a plaintiff is <u>not</u> required to demonstrate <u>actual use or commercial implementation</u> of a misappropriated trade secret to establish liability. Specifically, First Circuit courts, citing the definition set forth in 18 USCA § 1839, have held that "Misappropriation requires the acquisition or disclosure of a trade secret with knowledge that the trade secret was acquired by improper means." *Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, 759 F. Supp. 3d 120, 145 (D. Mass. 2024); *Washington Tr. Advisors, Inc. v. Arnold*, 646 F. Supp. 3d 210, 217 (D. Mass. 2022). That definition defines actionable misappropriation to arise from improper acquisition, regardless of whether the defendant subsequently uses or commercially implements the stolen trade secret.

Here, Defendant acquired trade secrets for 11 months as a result of SPS's reasonable reliance on its contractual representations, only to abruptly terminate its relationship with SPS without payment while retaining SPS's transferred assets, oral know how and hundreds to thousands of hours of originally prepared and highly confidential training, to its direct benefit and to SPS's direct detriment. Under such circumstances, it is a <u>question of fact</u> as to whether Defendant has <u>improperly acquired multiple trade secrets</u> originally developed by Plaintiff, for absolutely no consideration and in direct breach of the agreement between the parties, or through intentional fraud or willful negligence, to the direct detriment of Plaintiff.

### 2.    SPS Identified Protectable Trade Secrets

Colorado's CUTSA does not impose a pre-discovery particularity requirement. Instead, Colorado courts evaluate whether the information is a trade secret by a <u>fact-intensive inquiry</u> under C.R.S. § 7-74-102 (secrecy, value, and protective measures), and have <u>repeatedly</u> held that trade-secret status is a <u>question of fact</u> <u>reserved for the trier of fact</u>. *See Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 521 (Colo. App. 2011) (proprietary, password-protected client/debtor database qualified;

16

trade-secret status is factual). Similarly, the DTSA statute contains no particularity requirement for the pleading of trade secrets. A plaintiff asserting a DTSA claim in the First Circuit must "adequate[ly]" describe the asserted trade secrets "with clarity that can be understood by a lay person." *Insulet Corp. v. EOFlow Co., Ltd.,* 779 F. Supp. 3d 101, 115 (D. Mass. 2025).

Even were there such a requirement, SPS Trade Secrets 2, 3, 5, and 8 are more than identified with detailed particularity. SPS provided category-by-category, <u>operationally granular</u> descriptions, so the remaining elements (secrecy, value, reasonable measures) present triable fact questions for the jury. Disputed SMF ¶¶ 34, 37, 51, 60; (*See also* Ex. 106, ¶¶ II, III, V, VIII).

###### a) Trade Secret #2: SPS's Originally Developed ███████

SPS's Trade Secret #2 is described by SPS's expert, Monty Myers as "████████

████████████████████████████████

████████████████████ and that ████

████████████████████████████████

████████" SMF ¶ 105-106; Ex. 181, Expert Report of Monty

G. Myers ¶ 128. He further states: "████████████████████

████████" *Id*. SPS originally created these ████████ and provided them to

Defendant on a flash drive after the NDA was signed with an express notice of confidentiality.

Disputed SMF ¶ 105-106.

Pollock summarized this trade secret during his deposition and gave an example:



Disputed SMF ¶ 15; Ex. 127, Dep. Pollock 323:16-324:10. The record shows Trade Secret #2 was

disclosed and described with sufficient particularity. Under Colorado law, it is up to the jury to

determine a question of fact whether Trade Secret #2 is protectable. *See Saturn Systems, Inc. v.*

*Militare*, 252 P.3d 516, 521 (Colo. App. 2011) (trade-secret status is factual).

### b)   *Trade Secret #3: SPS's Originally Developed Data Architecture Workflows*

SPS's Originally Developed ██████████████████ are not an amorphous "idea," but

a documented set of ███████████████. SMF ¶ 114. As Pollock explained, ███████████

██████████████████████████" and he tied that definition directly to

SPS's ████████████████. Ex. 127, Pollock Dep. 342:11-346:16. Pollock

explained the ████████████████████████ *Id.* 345:1-16; SMF

¶115 (citing Ex. 124). SPS created ████████████ document that ██████████████

██████████████████████ Similarly, SPS

documents the ████████████ The ████████████ details the ████████████

████████████. Pollock's testimony and the workflow documents produced are

wholly original, sufficiently definite to create an issue of fact for the jury to determine if TS#3 is a

protectable trade secret.

### c)   *Trade Secret #5: SPS Rules Engine Design*

SPS's ████████████ constitutes an original, ████████████████████

████████████████████████████████

████████████████████ SMF ¶ 139. Pollock confirmed the same

description at his deposition: "████████████████████████

████████████████████████████████

████████████████ Ex. 127, Pollock Dep. 422–23; SMF ¶ 141. Pollock's also explains

how it functions at a practical level: ████████████████████████

████████████████████████████████

█████████.” Ex. 127, Pollock Dep. 427:22–428:16.; Disputed SMF ¶¶ 15,16, 34, 37. ███

███████████████████████████████████████████████████████████████████████████

█████ █████ ██████—are original and highly developed and supply the object, scope, and

operation of the trade secret with reasonable particularity. *See* Disputed SMF ¶¶ 139, 141.

### d)    *Trade Secret #8: SPS Proprietary Business Strategy*

SPS's Trade Secret #8 is an original SPS proprietary business strategy focused on ███████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████. SMF ¶ 157; See Disputed SMF ¶ 132. Deposition

testimony corroborates and further particularizes the Trade Secret. Pollock explained that SPS "███

███████████████████████████████████████████████████████████████████████████

████████████████████████." Ex. 127 Pollock Dep. 100:1-8; Disputed SMF

¶¶ 15,16, 18, 22, 23, 24. Curran described the strategy's architecture and data handling verbatim:

"███████████████████████████████████████████████." Ex. 129

Curran Dep. 141:16-142:5; *See also* Disputed SMF ¶¶ 3, 11, 15, 16, 22, 23, 24. These sworn

descriptions of a ████████████████████████████████—provide the

what, how, and where of the trade secret. A jury applying Colorado and Federal trade secret law can

determine if the trade secret is protectable.

The relevant law demonstrates that particularity is not required. Regardless, SPS identified

its trade secrets with specificity, providing detailed descriptions as set forth above. Colorado and

federal courts both consistently hold that trade-secret status is a question of fact for the jury, not a

threshold legal determination.[2] Given the factual disputes regarding secrecy, value, and reasonable

---

[2] Defendant's reiteration of its prior reliance on the NDA's Massachusetts choice-of-law provision is misplaced, as the Court has already ruled that the NDA does not displace statutory claims under CUTSA.

measures, and the governing legal standard reserving these issues for the trier of fact, summary judgment is inappropriate.  On its face, the Court should deny DeliverHealth's motion on these claims and allow them to proceed to trial.

### G.    DHS Is Not Entitled to Summary Judgment on SPS's Unjust Enrichment Claim

Unjust enrichment under Massachusetts law turns on whether the defendant received a benefit, appreciated it, and retained it under circumstances making retention inequitable in light of the parties' reasonable expectations. *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329–33, (2005.  It remains available in the *alternative* when a contract is disputed or the recovery does not fully address compensation for benefits conferred. *Salomon v. Terra*, 394 Mass. 857, 859–62 (1985). SPS transferred original assets and substantial services to Defendant for 11 months towards the creation of a revenue integrity business for Defendant that did not exist when SPS was retained.  Disputed SMF ¶¶ 34, 37, 51, 60, 92, 106, 115, 121, 140, 145, 146, 147, 150, 159, 202, 208.  SPS acted in reasonable reliance on Defendant's representations. *Id.* In *Mass. Eye & Ear*, the First Circuit permitted unjust-enrichment recovery for benefits conferred during negotiations that later collapsed and affirmed an award of damages pegged to the value defendant gained. 412 F.3d at 234–36; 552 F.3d at 57–63. Defendant cannot defeat unjust enrichment by invoking contracts it elsewhere says do not exist or do not cover SPS's compensation for these transfers.

Accordingly, DHS is not entitled to summary judgment on SPS's claim for unjust enrichment.

## V.    CONCLUSION

DHS's Motion should be denied.  SPS has shown performance and reliance on DHS's promises, while DHS retained transferred assets and know-how without compensation. These contested issues must be resolved by a jury, not on summary judgment. Accordingly, SPS respectfully requests that the Court deny Defendant's Motion in its entirety.

Respectfully submitted on January 5, 2026.

By: /s/ Thomas P. Howard
Thomas P. Howard
Samuel R. Thomas
Scott E. Brenner
THOMAS P. HOWARD, LLC
842 W. South Boulder Rd.
Suite #100
Louisville, CO 80027
Telephone: (303) 665-9845
Fax: (303) 665-9847
thoward@thowardlaw.com
sthomas@thowardlaw.com
sbrenner@thowardlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ Melissa Bench
Melissa Bench